STATE OF NORTH CAROLINA v. TIMOTHY BOCZKOWSKI

No. COA97-1102

(Filed 15 September 1998)

**1. Evidence— circumstances of second wife's death—trial for murder of first wife—absence of accident**

Evidence of the circumstances surrounding the death of defendant's second wife was properly admitted in this prosecution of defendant for murder of his first wife to show that the first wife's death was not an accident where the trial court found the following similarities between the deaths of both of defendant's wives: both victims were married to defendant at the times of their deaths; both wives died at the home they shared with defendant and defendant was present at the time each wife died; defendant was performing CPR on each wife when emergency personnel arrived; the first wife died in or around a bathtub and the second wife died in or around a hottub; defendant claimed that both wives accidently drowned and that drinking problems had contributed to their deaths; both wives were similar physically and were approximately the same age; both women died on a Sunday; and insurance money was involved in both incidents.

**2. Witnesses— number of witnesses—no abuse of discretion**

In the prosecution of defendant for the murder of his first wife, the trial court did not abuse its discretion by admitting the testimony of 17 witnesses about the death of defendant's second wife.

**3. Criminal law— requested instruction—trial for only one murder—evidence of second murder—limiting instruction**

The trial court did not err by denying defendant's request for an instruction clarifying to the jury that defendant was on trial only for the death of his first wife where the trial court instructed the jury that evidence that defendant's second wife died under similar circumstances was admitted solely for the purpose of showing defendant's intent and the absence of accident.

**4. Evidence— hearsay—excited utterance exception**

Statements made by defendant's nine-year-old daughter to a family friend within hours after the death of her mother that she had heard her parents arguing and her mother telling defendant, "No, Tim, no; stop," were admissible in this first-degree murder

STATE v. BOCZKOWSKI

[130 N.C. App. 702 (1998)]

prosecution under the excited utterance exception to the hearsay rule, even if they were made in response to questions by the family friend.

Appeal by defendant from judgment entered 12 November 1996 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 17 August 1998.

At 2:55 a.m. on 4 November 1990, emergency personnel were summoned by a 911 call to the Boczkowski family's apartment in Greensboro. Rescue personnel from the Greensboro Fire Department and Guilford County Emergency Medical Services were directed into the family's second floor bathroom by the family's three children. The rescuers found defendant Timothy Boczkowski attempting to perform CPR on his wife Elaine, who was lying nude on the floor. Elaine was not breathing and had no pulse. The rescuers attempted to resuscitate her, but failed. Elaine was rushed to the hospital, where she was pronounced dead at 4:16 a.m.

At the police department, defendant told officers he was estranged from his wife, although they were still living together. He said they had separately attended their church social that evening, and that his wife had been drinking alcoholic beverages before the church function. Defendant stated that he came home alone around 12:40 a.m.

Defendant gave different versions of ensuing events to investigating officers. In one version, he claimed he was listening to headphones while asleep in the master bedroom and was awakened when he heard a noise in the bathroom. Defendant stated he used a screwdriver to pop the lock of the bathroom door when he got no answer after knocking. In another version, defendant stated that he was listening to music downstairs on the headphones and heard a noise in the bathroom. He stated he took the hinges off the door to gain entry into the bathroom.

In both versions, defendant claimed he found Elaine lying on her back in the tub with her head under water. He said he pulled her head up, placed her nightgown under her head, and pushed on her stomach to force water out. Defendant stated that vomit came out of her mouth instead of water. Defendant then lifted Elaine out of the bathtub, again tried to force water from her by pushing and squeezing her abdomen, and attempted CPR to revive her. After unsuccessfully attempting to revive his wife, he called 911.

Dr. Deborah Radisch, Associate Chief Medical Examiner for North Carolina, performed an autopsy on Elaine's body. Dr. Radisch found several bruises on Elaine's arm and a diagonal pattern of three parallel lines measuring 9-11 inches long impressed on Elaine's stomach. In addition, Dr. Radisch found five fresh bruises on the interior of Elaine's scalp and testified that only one of the five bruises could have resulted from someone falling and hitting their head in the bathtub. The toxicology report indicated that Elaine did not have alcohol or anti-depressant drugs in her blood when she died. Dr. Radisch could not determine the cause of Elaine's death, but she opined that Elaine did not die from drowning. Elaine's death certificate indicated that her cause of death was "undetermined," and the investigation into her death remained open.

On 7 November 1994, Greensboro detectives were notified that defendant's second wife, Mary Ann, had died in Pennsylvania under circumstances similar to Elaine's death. Again defendant gave several versions of the happenings surrounding his wife's death. Defendant claimed Mary Ann had consumed fourteen beers and some wine on the day she died. In several versions, defendant claimed he left his wife in their hot tub while he went to shower or to use the bathroom. Defendant claimed that when he returned ten to fifteen minutes later, he found Mary Ann unconscious in the hot tub.

Emergency medical personnel and police pulled Mary Ann out of the water and tried to revive her. Paramedics learned that defendant had previously attempted to resuscitate Mary Ann. Detectives interviewed defendant and noted that defendant had scratch marks on his neck and a fresh nick on his left thumb. They asked defendant to remove his shirt and saw fresh red scratch marks on his back and sides. Defendant claimed he was sunburned and Mary Ann had given him a scratch massage, but detectives noticed that defendant's skin was pale.

Mary Ann's autopsy revealed multiple bruises and abrasions on her body, including two bruises on her neck. Dr. Leon Rozin found five different bruises on the interior of Mary Ann's scalp. All of the bruises were fresh and had been sustained shortly before Mary Ann's death. Dr. Rozin concluded that Mary Ann had died as the result of homicide by manual strangulation and not by natural causes. Defendant was charged in Pennsylvania with murdering Mary Ann and in Guilford County, North Carolina, with murdering Elaine.

During the trial in the instant case, defendant presented evidence that Elaine accidentally drowned in her bathtub and Mary Ann died as a result of a heart attack while in their hot tub. The State presented contrary evidence from witness Randy Erwin, who shared a cell with defendant in a Pennsylvania jail after defendant's arrest for murdering Mary Ann. Erwin testified that he was reading a newspaper article about Mary Ann's and Elaine's murders when defendant approached him and boasted, "I'm famous . . . I'm the hot tub man." Erwin testified that he asked defendant why defendant killed both women the same way and defendant replied, "I don't know. That was stupid, wasn't it?"

On 1 November 1996, defendant Timothy Boczkowski was convicted of the first degree murder of Mary Elaine Pegher Boczkowski, and was sentenced to life in prison. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender J. Michael Smith, for defendant appellant.*

HORTON, Judge.

Defendant contends the trial court committed prejudicial error by: (I) denying his Rule 403 motion to suppress evidence of the subsequent death of his second wife in Pennsylvania; (II) admitting the testimony of 17 witnesses about the death of his second wife; (III) denying defendant's request for an instruction specifically clarifying to the jury that defendant was only on trial for the death of his first wife in North Carolina; and (IV) permitting the State to introduce certain hearsay statements by defendant's daughter Sandy Boczkowski as excited utterances.

To obtain appellate review, a question raised by an assignment of error must be presented and argued in the brief. *In re Appeal from Environmental Management Comm.*, 80 N.C. App. 1, 18, 341 S.E.2d 588, 598, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 139 (1986). Questions raised by assignments of error which are not presented in a party's brief are deemed abandoned. *State v. Wilson*, 289 N.C. 531, 535, 223 S.E.2d 311, 313 (1976). Defendant's brief failed to address numerous assignments of error including numbers 1, 3-16, and 18-25, and those issues are abandoned.

## (I)

**[1]** Defendant first contends the trial court erred by denying defendant's motion under Rule 403 to suppress evidence of the subsequent death of his second wife in Pennsylvania. Evidence of uncharged misconduct is admissible against a defendant under N.C. Gen. Stat. § 8C-1, Rules 403 (1993) and 404(b) (1993) so long as the evidence is probative of a relevant issue in the case, is admitted for some purpose other than showing defendant's propensity for the similar conduct, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. *State v. Stager*, 329 N.C. 278, 310, 406 S.E.2d 876, 894 (1991).

In the instant case, the State offered evidence of the circumstances surrounding the death of defendant's second wife, Mary Ann, to prove that Elaine's death was not an accident. The trial court concluded there was sufficient similarities between the two deaths "to give the uncharged conduct probative value and render it relevant to the issues to be decided in this case" because "it tends to show absence of accident in this case, explains the delay in charging the Defendant with this murder and gives context to certain of the witnesses' testimony."

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (Cum. Supp. 1997). In *Stager*, 329 N.C. at 309, 406 S.E.2d at 894, our Supreme Court upheld the admissibility of evidence of the death of that defendant's first husband in her trial for the murder of her second husband ten years later under similar circumstances. The Supreme Court held that Rule 404(b) is a general rule of inclusion of relevant evidence of other crimes, wrongs or acts, provided that such evidence must be excluded if its only probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged. *Id.* at 302, 406 S.E.2d at 890. The relevant test under Rule 404(b) is whether there was "substantial evidence tending to support a reasonable find-

ing by the jury that the defendant committed a similar act or crime and its probative value is not limited solely to tending to establish the defendant's propensity to commit a crime such as the crime charged." *Id.* at 303-04, 406 S.E.2d at 890.

When an accused contends a victim's death was an accident rather than a homicide, "[e]vidence of similar acts may be offered to show that the act in dispute was not inadvertent, accidental or involuntary." *Id.* at 304, 406 S.E.2d at 891. Based on the doctrine of chances, "the more often a defendant performs a certain act, the less likely it is that the defendant acted innocently." *Id.* at 305, 406 S.E.2d at 891.

In the instant case, the trial court found the following similarities between the deaths of both of defendant's wives:

a. that both alleged victims were women and were married to the Defendant at the time of their death;

b. that both alleged victims died at the home they shared with the Defendant and the Defendant was present at the time each woman died;

c. that the Defendant was the last person to see each woman alive and was performing CPR on each when emergency personnel arrived;

d. that the alleged victim in this case died in or around a bathtub and the deceased in the other incident died in or around a hottub;

e. that the Defendant made statements in both cases that his wife had accidentally drowned;

f. that the Defendant made statements in both cases that his wife had a drinking problem and that said drinking problem had contributed to her death;

g. that both women were similar physically in that both weighed 151 pounds at the time of death and the alleged victim in this case was 34 years of age at the time of death and the second wife was 35 at the time of death;

h. that both women died on a Sunday; and

i. insurance money was involved in both incidents.

Based on these findings, the trial court concluded the subsequent incident was sufficiently similar to give it probative value and, thus, it did not merely show defendant's propensity to commit this type of crime. Further, the trial court concluded the similar conduct was relevant to show absence of an accident, to explain the delay in charging defendant with the first wife's murder, and to give context to some of the witnesses' testimony. We note that our Supreme Court has held that

> [e]vidence of other crimes committed by a defendant may be admissible under Rule 404(b) if it establishes the chain of circumstances or context of the charged crime. Such evidence is admissible if the evidence of other crimes serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury.

*State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 853 (1995) (citations omitted), *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995).

Finally, the trial court concluded the probative value of the evidence outweighed any undue prejudice to defendant pursuant to Rule 403, and the evidence would not confuse or mislead the jury or cause undue delay. Our careful review of the record reveals the trial court did not err in admitting the evidence of the death of defendant's second wife. Therefore, this assignment of error is overruled.

(II)

**[2]** Next, defendant contends the trial court erred by admitting the testimony of 17 witnesses about the death of his second wife. Defendant contends the volume of evidence introduced through the testimony of these witnesses about Mary Ann's death deprived him of a fair trial. This same argument was rejected by our Supreme Court in *Stager*, 329 N.C. at 317, 406 S.E.2d at 898. In *Stager*, the State introduced detailed testimony about the death of defendant's first husband from 20 witnesses. *Id.* at 308, 406 S.E.2d at 893. In overruling defendant's objection, our Supreme Court stated:

> Generally, "[a]ll relevant evidence is admissible." N.C.G.S. § 8C-1, Rule 402 (1988). The extent to which counsel may pursue a permissible line of inquiry in questioning witnesses is a matter left to the sound discretion of the trial court. *Cf. Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (applying Rule 403). Here, we detect no abuse of that discretion by the trial court.

*Id.* In the instant case, defendant has not shown any unfair prejudice and our careful review of the record does not reveal that the trial court abused its discretion. Thus, this assignment of error is overruled.

## (III)

**[3]** In addition, defendant claims the trial court erred by denying defendant's request for an instruction specifically clarifying to the jury that defendant was only on trial for the death of his first wife Elaine in North Carolina, and not for the death of his second wife Mary Ann in Pennsylvania. A judge is not required to frame instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence. *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). The trial court instructed the jury as follows:

> Now, evidence has been received tending to show that Mr. Boczkowski's second wife Mary Ann Boczkowski, died under similar circumstances. This evidence was received solely for the purpose of showing that Mr. Boczkowski had the intent, which is a necessary element of the crime charged in this case, and for the purpose of showing the absence of accident, and explaining some of the circumstances, including any delay in charging Mr. Boczkowski, arising during the investigation. If you believe this evidence, you may consider it, but only for that limited purpose and for no other purpose.

These instructions show the trial court essentially conveyed what defendant was requesting, and enabled the jurors to correctly weigh and consider the evidence concerning the death of defendant's second wife. Therefore, this assignment of error is overruled.

## (IV)

**[4]** Finally, defendant contends the trial court erred by permitting the State to introduce the alleged hearsay statements of Sandy Boczkowski as excited utterances. Defendant objected to the introduction of statements allegedly made within hours of Elaine's death by his daughter Sandy, then nine years old, to Gerri Minton, a family friend and member of the Boczkowski family's church. The trial judge held a voir dire hearing and determined the statements were admissible as spontaneous utterances under N.C. Gen. Stat. § 8C-1, Rule 803(2) (1992). Thereafter, Minton testified about Sandy's statements.

N.C. Gen. Stat. § 8C-1, Rule 803(2) allows into evidence "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."Our Supreme Court has held that "[i]n order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985). When considering the spontaneity of statements made by young children, there is more flexibility concerning the length of time between the startling event and the making of the statements because "the stress and spontaneity upon which the exception is based is often present for longer periods of time in young children than in adults." *Id.* at 87, 337 S.E.2d at 841.

In the instant case, the evidence showed that as emergency medical personnel arrived at the Boczkowski apartment, the three children were taken to a neighbor's apartment until later that morning. Gerri Minton arrived at the Boczkowski apartment at approximately 10:00 a.m. to help the family. While at the apartment, Sandy told Minton that earlier that morning she heard her parents arguing and her mother telling defendant, "No, Tim, No; Stop." Later that same day, Minton went upstairs with Sandy to help her pack some clothes to spend the night at someone else's house. As they walked past the bathroom where Sandy's mother died, Sandy repeated to Minton that she had heard her parents arguing and her mother telling defendant, "No, Tim, No; Stop."

Defendant contends these comments are inadmissible because they were merely answers to questioning by Minton. Even if these statements were made in response to questions by Minton, statements or comments made in response to questions do not necessarily rob the statements of spontaneity. *State v. Thomas*, 119 N.C. 708, 714, 460 S.E.2d 349, 353 (1987).

Defendant also contends the statements are inadmissible because at trial Sandy testified she did not make these statements. However, Rule 803(2) allows the statement to be admitted regardless of the declarant's subsequent testimony. Sandy's subsequent testimony goes to the weight the jury should give to the statements rather than to their admissibility.

The record reveals sufficient evidence from which the trial judge could conclude Sandy's statements were the product of spontaneous

reactions to a traumatic event rather than the result of reflection or fabrication. Thus, this assignment of error is overruled.

We have carefully reviewed the remaining assignments of error and find them to be without merit. Defendant's trial was free from prejudicial error.

No error.

Chief Judge EAGLES and Judge MARTIN, Mark D., concur.