STATE OF NORTH CAROLINA v. RONALD KENT TAYLOR

No. COA02-176

(Filed 3 December 2002)

### 1. Assault— contributory negligence instruction—refused

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by refusing defendant's requested instruction that the State must prove that the negligent acts of the victim were not the intervening cause of her injuries. Contributory negligence by a victim does not preclude consideration of defendant's culpable conduct.

### 2. Criminal Law— defense of accident—submitted to jury

The trial court submitted the defense of accident in an assault prosecution where the court told the jury that defendant had no burden to prove that there was an accident and that the State had the burden of proving that the injury was not accidental.

### 3. Evidence— prior crimes or bad acts—used to rebut defense—temporally proximate—limiting instruction

There was no error in an assault prosecution in the testimony of defendant's former spouse about his prior bad acts, including chasing her through the house and placing a gun to her head, where the testimony rebutted defendant's defense of accident in the shooting of his current companion, defendant's actions in 1993 were sufficiently similar to be temporally proximate, and the court gave a limiting instruction.

### 4. Evidence— prior crimes or bad acts—unfair prejudice—outweighed by probative value

In a assault prosecution for shooting his current companion, evidence from defendant's former spouse of prior bad acts, including threatening to kill their children if she did not sign a visitation agreement, was not overly prejudicial in violation of N.C.G.S. § 8C-1, Rule 403.

### 5. Evidence— prior crimes or bad acts—breaking mirror on truck—character for truthfulness

The trial judge in an assault prosecution did not abuse his discretion by admitting on cross-examination evidence that defendant had previously become angry and broken the mirror

**STATE v. TAYLOR**

[154 N.C. App. 366 (2002)]

on his truck. Defendant had given an equivocal answer when asked whether he was at a certain restaurant on a particular night and the mirror question was designed to demonstrate that he was present. Moreover, defendant did not show a reasonable possibility of a different outcome had the evidence of prior acts of violence been excluded.

**6. Appeal and Error— preservation of issues—improper use of evidence—no assignment of error**

An issue concerning the improper use of evidence of prior acts of violence was not preserved for appeal where defendant did not make the argument the subject of an assignment of error.

**7. Evidence— other crimes or bad acts—marijuana sale—not relevant to veracity—not prejudicial**

There was no prejudicial error in an assault prosecution where the court erroneously allowed the State to cross-examine defendant about selling marijuana to his neighbor, which had no relevance to defendant's veracity as a witness, but defendant did not show a reasonable possibility of a different outcome had the question been excluded.

Appeal by defendant from judgment dated 11 October 2001 by Judge James U. Downs in Superior Court, Henderson County. Heard in the Court of Appeals 16 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for the State.*

*Roy D. Neill for defendant-appellant.*

McGEE, Judge.

Ronald Kent Taylor (defendant) was indicted on 22 January 2001 for assault with a deadly weapon with intent to kill inflicting serious injury. The State's evidence presented at trial tended to show that defendant and Julie Roy (Ms. Roy) attended a Christmas party together on 9 December 2000. After consuming alcohol at the party, defendant and Ms. Roy had a disagreement because she thought defendant was flirting with another woman. Defendant and Ms. Roy left the party at midnight with defendant driving the vehicle. On the way home, Ms. Roy grabbed the steering wheel and forced the vehicle off the road and into a ditch. Ms. Roy climbed out of the wrecked vehicle, flagged down a passing car driven by Theresa

Kimmey (Ms. Kimmey) who drove Ms. Roy back to the party. Ms. Roy was unable to obtain help at the party and Ms. Kimmey drove her back to the wrecked vehicle. Officer Jason Garren of the Henderson County Sheriff's Department (Officer Garren) testified that he arrived at the wrecked vehicle in the early hours of 10 December 2000. Officer Garren stated that Ms. Roy was crying and upset and he detected a strong odor of alcohol on her breath. Officer Garren drove Ms. Roy to defendant's house, which was locked with no lights on. Ms. Roy asked Officer Garren to spend the night because she said defendant was crazy. She also asked Officer Garren to break into the house to see if defendant was okay. Officer Garren refused her requests, but he rang the doorbell, banged on the door, and telephoned defendant from his patrol vehicle. Officer Garren offered to take Ms. Roy to another location for the evening; however, she refused and Officer Garren left.

Defendant testified that he caught a ride home with a passerby and went to bed. He said he was awakened by a loud banging on his back door at approximately 3:00 o'clock a.m. Defendant got his pistol and went downstairs. He opened the door when he saw it was Ms. Roy. Ms. Roy yelled about her vehicle, asked defendant why he did not just shoot her, and then attempted to take the pistol from defendant. After failing to wrestle the pistol from defendant, Ms. Roy said she would get her own gun, and began walking upstairs. Defendant told Ms. Roy that if she continued walking upstairs he would call 911, which he did. As defendant called 911, Ms. Roy stopped walking and said she would behave, and defendant hung up the telephone. The 911 operator called back and defendant began screaming at the operator. When defendant heard the click of a shotgun being loaded upstairs, he hung up the telephone and ran outside the house.

Officer Garren returned to the house with Lieutenant Michael Peppers (Lt. Peppers) a few minutes later and found defendant standing at the road wearing a coat and pajamas. Officer Garren talked to defendant, who stated that Ms. Roy had guns and that defendant was afraid she would use them. Lt. Peppers stated that Ms. Roy smelled of alcohol and was very belligerent with Officer Garren. Defendant and Ms. Roy agreed to sleep in separate bedrooms and the officers told defendant to unload the guns and hide them separately from the ammunition. The couple refused additional assistance and the officers left.

A few minutes later, Officer Garren and Lt. Peppers received a report of a gunshot wound at defendant's house and returned to the

house. Defendant was still on the telephone with the 911 operator and the officers asked him to hang up and come outside, which he did. Defendant stated that he was going to take the officers' guns and shoot himself. Lt. Peppers took defendant into custody and defendant stated that he had shot Ms. Roy. Ms. Roy was found lying on her side in a pool of blood in the bathroom of the master bedroom that was located downstairs. A six-round pistol with one spent round was found on the edge of the bed and a loaded shotgun was on the dresser.

Defendant testified that when the officers had left defendant's house earlier, Ms. Roy went upstairs to a bedroom, and that he took the loaded shotgun and pistol into a downstairs bedroom to unload them. Defendant testified that as he was unloading the pistol, Ms. Roy attempted to grab it. According to defendant, he pushed her away, she lunged again, and the pistol went off. Defendant said that after the pistol went off he saw blood and Ms. Roy fell to the floor. Defendant called 911 a second time, screamed and cried, and stated that Ms. Roy had jumped on him and the pistol had gone off. Defendant testified that he tried to keep the pistol pointed at the ceiling during the struggle and that he did not know who caused it to go off.

Testimony by Detective Vickie Bane of the Henderson County Sheriff's Department demonstrated that the bullet hit the wall 62.5 inches from the floor and bounced to the floor after exiting Ms. Roy's body. Dr. Steven Miller (Dr. Miller), who initially treated Ms. Roy, testified that the bullet severed Ms. Roy's right carotid artery and that she suffered severe brain damage as a result of lost blood circulation. Dr. Miller also stated that no powder burns were found on Ms. Roy's body, which would be expected had the barrel of the pistol been less than one foot away from the wound.

Defendant was tried for assault with a deadly weapon with intent to kill inflicting serious injury. The jury convicted defendant of the lesser included offense of assault with a deadly weapon inflicting serious injury. The trial court sentenced defendant to a minimum of twenty-four months and a maximum of thirty-eight months in prison. Defendant appeals.

[1] Defendant first argues the trial court erred by not instructing the jury to consider any culpable negligence by Ms. Roy as an intervening cause of the gunshot injury. Defendant requested that the trial court instruct the jury that "[t]he State must convince you beyond a reasonable doubt that the negligent acts of Ms. Roy, if any, were not the

intervening cause of her injuries. If the state fails . . . then you would not consider whether the defendant was culpably negligent."

A requested jury instruction must be given, at least in substance, if it is legally correct and supported by the evidence. *State v. Lundy*, 135 N.C. App. 13, 23, 519 S.E.2d 73, 81 (1999). "On appeal, defendant must show that substantial evidence supported the omitted instruction and that the instruction was correct as a matter of law." *State v. Farmer*, 138 N.C. App. 127, 133, 530 S.E.2d 584, 588, *disc. review denied*, 352 N.C. 358, 544 S.E.2d 550 (2000).

"The defense of accident is triggered in factual situations where a defendant, without premeditation, intent, or culpable negligence, commits acts which bring about the death of another. It is not an affirmative defense, but acts to negate the *mens rea* element of homicide." *State v. Lytton*, 319 N.C. 422, 425-26, 355 S.E.2d 485, 487 (1987) (citations omitted). Contributory negligence is no defense in criminal law and the appropriate inquiry is whether a defendant's culpable conduct is a proximate cause of a victim's injury. *State v. Harrington*, 260 N.C. 663, 666, 133 S.E.2d 452, 455 (1963).

Contributory negligence on the part of a victim does not preclude the jury's consideration of a defendant's culpable conduct. The jury is responsible for determining if a defendant's culpable conduct is a proximate cause of the victim's injury and must decide guilt or innocence on that basis. *Id.* Consideration of this proximate causation is not contingent upon a showing that the victim was not contributorily negligent. Defendant's requested jury instruction was erroneous as a matter of law and defendant was therefore not entitled to have the instruction given to the jury.

**[2]** Defendant also contends that if his culpable negligence was not the proximate cause of Ms. Roy's injuries, the defense of accident should have been considered by the jury. The trial transcript indicates that the trial court did instruct the jury on the defense of accident. The trial court stated that "defendant [had] no burden to prove that there was an accident." The trial court also stated that the State possessed the burden of proving beyond a reasonable doubt that Ms. Roy's injury was not accidental before the jury could return a guilty verdict. The jury was properly instructed on the defense of accident and this defense was not precluded from consideration by the jury. This assignment of error is without merit.

**[3]** Defendant next argues the trial court erred by admitting evidence of prior bad acts in violation of North Carolina Rule of

Evidence 404(b). Defendant contends that evidence of his past acts were too remote in time and substantially insufficient to be admitted into evidence.

Rule 404(b) operates as a general rule of inclusion for relevant evidence but excludes evidence if its only probative value is to demonstrate the defendant's propensity to commit the crime. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2001); *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990); *see also State v. McAllister*, 138 N.C. App. 252, 257, 530 S.E.2d 859, 863, *appeal dismissed*, 352 N.C. 681, 545 S.E.2d 724 (2000). Evidence of other crimes, wrongs, or acts may be admitted under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b); *see also State v. Barnett*, 141 N.C. App. 378, 389, 540 S.E.2d 423, 431 (2000), *aff'd*, 354 N.C. 350, 554 S.E.2d 644 (2001); *State v. Boczkowski*, 130 N.C. App. 702, 504 S.E.2d 796 (1998).

Defendant's former spouse, Lynn Lucker (Ms. Lucker), testified to bad acts that defendant committed in 1993. Ms. Lucker testified that defendant chased her through their house, placed a gun to her forehead, and talked about the different angles in which he would need to hold the gun in order to make a shooting look like an accident. She also testified that defendant had stated that he would kill their children and make it look like an accident if she did not sign a custody visitation agreement with him following their divorce.

Ms. Lucker's testimony concerning defendant's prior bad acts possessed probative value other than to demonstrate defendant had the propensity to commit the crime. At trial, defendant argued that the shooting of Ms. Roy was an accident caused by his and Ms. Roy's struggle for the pistol. Ms. Lucker's testimony was designed to rebut the defense of accident, one of the bases for admission of evidence under Rule 404(b), and was probative of whether or not the shooting of Ms. Roy was accidental. While the acts Ms. Lucker testified about occurred in 1993, they were sufficiently similar to be temporally proximate to the facts in the present case and were admissible. *See State v. Hall*, 85 N.C. App. 447, 451, 355 S.E.2d 250, 253 (stating that remoteness generally goes to the weight of the evidence, not its admissibility), *disc. review denied*, 320 N.C. 515, 358 S.E.2d 525 (1987). Additionally, the trial court correctly instructed the jury to consider the evidence for the limited purpose of demonstrating the lack of accident or mistake on the part of defendant. This assignment of error is without merit.

**[4]** Defendant next argues the admission of Ms. Lucker's testimony was overly prejudicial and in violation of North Carolina Rule of Evidence 403. Otherwise relevant evidence must be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (2001). "[T]o be excluded under Rule 403, the probative value of the evidence must not only be outweighed by the danger of unfair prejudice, it must be *substantially* outweighed." *State v. Lyons*, 340 N.C. 646, 669, 459 S.E.2d 770, 783 (1995). "Whether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). This Court will not overturn the decision of a trial court unless it "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

> The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded.

*State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citations omitted); *see also* N.C. Gen. Stat. § 15A-1443(a) (2002).

As previously discussed, defendant testified that the pistol was unintentionally discharged during a struggle with Ms. Roy. However, Ms. Lucker's testimony was probative of whether or not the shooting was accidental and was not outweighed by the danger of unfair prejudice to defendant. The value of the evidence in demonstrating the lack of accident was greater than any potentially unfair prejudice. The trial transcript shows that the trial court conducted a *voir dire* hearing of Ms. Lucker's testimony and considered the admission of the evidence before allowing the jury to hear the testimony. The trial court issued a limiting instruction to the jury to consider the evidence only for the purpose of evaluating defendant's defense of accident. *See State v. Penland*, 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996) (finding no prejudicial error in the admission of bad acts when the court gave a limiting instruction), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997). Furthermore, defendant has failed to demonstrate that the danger of prejudice substantially outweighed the probative value of the evidence and that he was actually prejudiced by its

admission. *Gappins*, 320 N.C. at 68, 357 S.E.2d at 657. This assignment of error is without merit.

**[5]** Defendant next argues that the trial court erred in admitting evidence that he had previously become angry and had broken the mirror on his truck. N.C. Gen. Stat. § 8C, Rule 608 states that specific instances of a witness's conduct may be inquired into on cross-examination if probative of the witness's "character for truthfulness or untruthfulness." N.C. Gen. Stat. § 8C-1, Rule 608(b) (2001).

> Rule 608(b) of the North Carolina Rules of Evidence governs the admissibility of specific acts of misconduct where (i) the purpose of the inquiry is to show conduct indicative of the actor's character for truthfulness or untruthfulness; (ii) the conduct in question is in fact probative of truthfulness or untruthfulness; (iii) the conduct in question is not too remote in time; (iv) the conduct did not result in a conviction; and (v) the inquiry takes place during cross-examination.

*State v. Bell*, 338 N.C. 363, 382, 450 S.E.2d 710, 720 (1994), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995). Admission of this evidence on cross-examination is in the discretion of the trial court and will not be overturned absent an abuse of that discretion. *State v. Kimble*, 140 N.C. App. 153, 168, 535 S.E.2d 882, 892 (2000).

In the case before us, defendant was questioned about a statement he made to friends at Flannagan's Restaurant one evening. In laying the foundation for the question, the State asked defendant if he was at Flannagan's on the night in question and defendant responded, "[p]ossibly, yes." The evidence elicited by the State was designed to demonstrate that defendant was at Flannagan's on the night in question and to rebut any assertion that defendant was elsewhere. The evidence was used to test the truthfulness of defendant's answer and to determine his presence with friends at the restaurant. We do not find that the trial court abused its discretion in admission of the evidence.

Additionally, even assuming *arguendo* that the evidence was erroneously admitted, defendant has failed to demonstrate that he was prejudiced by the admission of the testimony. *Gappins*, 320 N.C. at 68, 357 S.E.2d at 657. Defendant has not proven that there is a reasonable possibility the outcome of the trial would have been different had the evidence of defendant's acts of violence been excluded. N.C.G.S. § 15A-1443(a). This assignment of error is without merit.

**[6]** Defendant also argues that evidence of this act of violence was admitted solely to show it was likely he would lose his temper and assault Ms. Roy. Defendant asserts that the State used this evidence in its closing statement, thereby demonstrating the improper purpose for which it was admitted. However, defendant failed to make this argument the subject of an assignment of error and did not preserve this issue for appeal. Accordingly, we decline to address this argument. N.C. R. App. P. 10(c)(1).

**[7]** Lastly defendant argues the trial court erred in allowing the State to cross-examine defendant concerning his alleged sale of marijuana to his neighbor. Defendant contends admission of this evidence was in violation of N.C.G.S. § 8C-1, Rule 608. As previously stated, specific instances of a witness's conduct may be inquired into on cross-examination if probative of the witness's "character for truthfulness or untruthfulness," and admission of the evidence is subject to the discretion of the trial court. N.C.G.S. § 8C-1, Rule 608(b); *Kimble*, 140 N.C. App. at 168, 535 S.E.2d at 892.

Defendant cites *Bell* in support of his argument that evidence of the sale of drugs is not probative of truthfulness. In *Bell*, our Supreme Court held that the trial court properly restricted inquiry into a witness's possession of marijuana with intent to sell because it was not relevant to the witness's general veracity. *Bell*, 338 N.C. at 382-83, 450 S.E.2d at 720-21. The Court reasoned that the evidence needed to be probative of the defendant's character for truthfulness.

In the case before us, the record fails to show the relevance of defendant's sale of marijuana to his veracity as a witness and should have been excluded. Whether or not defendant sold marijuana to his neighbor is not probative of defendant's truthfulness in this case. Defendant argues that this question was prejudicial in light of other questions concerning defendant's cocaine use and threatening conversations with bill collectors. However, defendant has not assigned error to these questions and they are not before us for review. While the question involving the sale of marijuana was inappropriate, defendant has failed to demonstrate how he was prejudiced by admission of the evidence. Defendant has not proven that there is a reasonable possibility the outcome of the trial would have been different had this question been excluded and he has therefore failed to showed he was prejudiced. *See Gappins*, 320 N.C. at 68, 357 S.E.2d at 657. We overrule this assignment of error.

The defendant received a fair trial, free of prejudicial error.

No error.

Judges HUDSON and BIGGS concur.