STATE OF NORTH CAROLINA, Plaintiff v. BREON JERRARD BEATTY, Defendant

No. COA07-593

(Filed 1 April 2008)

**1. Appeal and Error— preservation of issues—proposed instruction—given without objection—plain error not alleged**

An issue concerning a self-defense instruction in a homicide case was not properly before the appellate court where the proposed instruction was given (despite defendant's contention to the contrary) and defendant did not object to the wording, request any modification or addition, and did not assert plain error.

**2. Evidence— notebook found in brother's bedroom—prejudice not established**

Defendant did not establish prejudice from the admission of a notebook with gang information found in the bedroom of defendant's brother, assuming that the notebook was irrele-

**STATE v. BEATTY**

[189 N.C. App. 464 (2008)]

vant. The jury did not find that gang involvement was an aggravating factor.

Appeal by defendant from judgment entered on or about 27 September 2007 by Judge Ripley E. Rand in Superior Court, Durham County. Heard in the Court of Appeals 28 November 2007.

*Attorney General Roy A. Cooper, III by Special Deputy Attorney General Melissa L. Trippe for the State.*

*Leslie C. Rawls for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of voluntary manslaughter. Defendant appeals. The issues before this Court are whether the trial court erred (1) in refusing to give defendant's proposed jury instruction and (2) in admitting a notebook into evidence. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show the following: On 11 January 2005, Calib Thomas ("Thomas"), Antonio Dent ("Dent"), and several other boys were at the Joy Store Food Mart ("Food Mart") when they saw "two dudes riding on bikes . . . throwing gang signs" which they recognized to be from the Folk Nation ("Folk") gang. At the Food Mart, Thomas and Dent were associating with gang members from the Bloods and the Crips. Thomas and Dent approached the boys throwing gang signs. Dent said, "Blood Time" to the two boys on bikes who said they didn't "bang" (were not members of the gang). Thomas and Dent then left them alone and went to Jarrell's house to smoke.

Later Thomas and Dent returned to the Food Mart and then decided to visit Thomas' aunt. As Thomas and Dent were crossing Banner Street they saw three "dudes on bikes" in the Advance Auto parking lot, including the two individuals from their earlier encounter and defendant. Thomas knew defendant because they had attended the same school. Defendant pulled out a gun and Thomas heard shots as he and Dent headed back to the Food Mart. Dent asked if he was shot and then "started shaking, his eyes started rolling back in his head, he fell down, and that's when he started screaming and saying call the ambulance." Dent died as a result of "a gunshot wound of the abdomen."

On 22 February 2005, Cindy Felts ("Felts"), a crime scene investigator with the Durham Police Department visited defendant's home "to locate documents and collect evidence from the scene." Felts found a red notebook "in the bottom left dresser drawer" in the bedroom belonging to defendant's brother, Nick. That same day a warrant was issued for defendant's arrest because defendant "unlawfully, willfully and feloniously did of malice aforethought kill and murder Antonio Demetrius Dent." On or about 21 March 2005, defendant was indicted for second degree murder. On 5 September 2006, defendant notified the State he would be claiming self-defense. Trial was held 14-27 September 2006.

During defendant's case-in-chief, defendant testified that he was a member of the Folk gang and that he shot Dent because Dent had pulled a gun on him. Defendant was convicted of voluntary manslaughter, but the jury did not find an aggravating factor regarding gang involvement. Defendant appeals. The issues before this Court are whether the trial court erred (1) in refusing to give defendant's proposed jury instruction and (2) in admitting the red notebook into evidence. For the following reasons, we find no error.

## II. Proposed Jury Instruction

[1] Defendant first contends "[t]he trial court erred when it denied Mr. Beatty's request for jury instructions supported by the evidence and by the law." Defendant argues that the refusal of the trial court to submit the proposed jury instructions was prejudicial error. We disagree with defendant's argument.

At the charge conference, defendant's counsel proposed three jury instructions, only one of which is before us on appeal. The proposed jury instruction which is at issue read,

> Ladies and Gentlemen of the Jury, I further instruct you that

> When a person, being without fault, and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force; and if, in the reasonable exercise of his right of self-defense, his assailant is killed, he is justifiable [sic].

> One who merely does an act which affords an opportunity for conflict is not thereby precluded from claiming self-defense. Fault implies misconduct not lack of judgment. That one is armed does not foreclose the right of self-defense if otherwise the defendant would have been entitled to the defense.

During the discussions regarding the proposed instruction, the trial court initially declined to give the instruction, then agreed to give the instruction, and then later declined to give the instruction. Defendant's counsel objected. The jury was brought back into the courtroom and heard defendant's closing argument. The jury was then excused for lunch and the judge asked the attorneys if they had any further requests before the lunch break; the attorneys did not.

Upon reconvening, outside of the presence of the jury, the judge reviewed the jury instructions which he intended to give. Both attorneys actively analyzed the instructions and defendant's counsel did not bring up the proposed jury instruction, which was not included in the final instructions. The jury entered the courtroom and heard the State's closing argument. The court then took an afternoon break and the judge again asked the lawyers outside of the presence of the jury if they would like to address any other matters; neither attorney did.

Upon reconvening from their afternoon break, the court handed out the jury instructions for the jurors to follow along with as they were read aloud. Those instructions did not contain defendant's proposed jury instruction. After being instructed the jury retired to the jury room to select a foreperson. The judge asked the attorneys if there were "any requests for any additional, or modified, or corrected instructions or anything of that nature[.]" Defendant's counsel did not mention the proposed jury instruction.

When the jury returned, the judge gave some final instructions and dismissed the jury for the evening. Before leaving for the evening, the trial judge asked the attorneys one final time if they had anything further; neither attorney did.

Upon reconvening the next day, the judge sent the jury back into the jury room for deliberations and asked the attorneys if there was anything they needed to talk about; defense counsel did not address the proposed instruction. After approximately two hours, the court received two notes from the jury—one requesting "a better definition of aggressor and of excessive force" and the other requesting a break. In discussing the issue of a "better definition of aggressor and of excessive force" defendant's counsel again requested the proposed jury instruction and the court agreed to instruct the jury accordingly, stating that he had intended to give that instruction earlier and had "neglected" to do so.

The judge then informed the jury,

I further instruct you at this time that if you find from the evidence that the defendant was not the aggressor, he could stand his ground and repel force with force, regardless of the character of the assault being made upon him. However, the defendant would not be excused if he used excessive force.

We note that the record indicates that the judge's stated intent was to give the instruction as previously requested by defendant's counsel, because he had "neglected" to do so. Defendant did not object to the instruction as given or request any modification to it. After the jury again retired to deliberate the judge asked the attorneys if they had anything further and defendant's counsel did not address the proposed jury instruction.

"Where a defendant fails to properly object at trial, he may argue plain error on appeal. N.C.R. App. P. 10(c)(4). However, [where a] defendant has not asserted plain error . . . [he] has waived plain error review." *State v. Johnson,* 181 N.C. App. 287, 290, 639 S.E.2d 78, 80 (citing *State v. Dennison,* 359 N.C. 312, 312, 608 S.E.2d 756, 757 (2005)), *disc. rev. denied,* 361 N.C. 364, 644 S.E.2d 555 (2007).

Here, defendant argues the trial court erred in refusing to give his proposed jury instruction. However, the trial court actually did give the proposed jury instruction and afterward defendant did not object at trial to the substance of the instruction as given. We are aware that the trial judge originally declined to give defendant's proposed jury instruction and that the proposed jury instruction was not actually given to the jury until almost two hours after the jury had begun deliberations; however, defendant does not argue that this delay caused any prejudice, but rather only contends that his proposed jury instructions were not given and that he was prejudiced because of the failure of the trial court to give the proposed jury instructions. We find defendant's argument to be factually incorrect as an instruction addressing the same issue as the proposed instructions was actually given to the jury, even if the wording was not exactly as defendant had proposed. We note that defendant has not objected to the wording of the instruction as given, but instead contends that the instruction was not given at all. However, the instruction was given and defendant did not object or request any modification or addition to the instruction when it was given. Defendant also failed to assert plain error on this appeal. Therefore, this issue is not properly before us. *See Johnson* at 290, 639 S.E.2d at 80.

### III. Admissibility of the Red Notebook

[2] Defendant next contends "[t]he trial court erred when it over-ruled [d]efendant's objection to the admission of the red notebook found in [d]efendant's brother's room because no evidence connected the notebook to the [d]efendant and any probative value was out-weighed by its prejudicial effect." "Whether or not to exclude evi-dence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be dis-turbed on appeal absent a showing of an abuse of discretion." *State v. McCray*, 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995).

At trial defendant's counsel objected to the introduction of the red notebook found by Felts into evidence and the following dialogue took place outside of the presence of the jury:

MS. BROWN: Your Honor, I would object based on the fact that there is no tie-in with my client and that notebook, at least—maybe the State is going to bring a tie-in later, but at the moment, I would just—I'd object insofar as being admitted in this case. I certainly would not object to the fact that they have shown a chain of custody and having received that notebook out of the house, and they properly brought it here, and I don't contend that there's any alteration to the notebook or anybody has done any-thing to the notebook. I'm just simply saying—the State is yet to make a connection between that notebook that was found in in [sic] Nicholas' room with my client. And so I at this moment, I would object to that.

THE COURT: So is it a relevancy argument at this point?

MS. BROWN: It's a relevancy argument.

THE COURT: Mr. Saacks.

MR. SAACKS: Your Honor, clearly, this notebook and the whole reason that this is an argument is this notebook has a bunch of gang graffiti and bunch of gang information inside of it. The point is just like anything that's found in a house would be relevant. For instance, if a movie was found in the living room, or the den, or a book, you know, that outlined how to do something, even though you can't show that the defendant actually read that book or saw that movie, it would be relevant and be circumstances to be con-sidered by the jury. The point is that even though this is Nick's room, this is obviously a close family member of this defendant,

and he probably had access to it. It's in the home where he's living and it was in the room of an immediate family member that was there.

I agree with what we were talking about before, I think that goes to the weight of the evidence as opposed to the admissibility of it, and I think there will be some further evidence which shows even more relevance than what already does exist, because there's going to be other items coming up, another notebook that was found in this defendant's room, that has the same kinds of gang graffiti in it as well. So it's going to corroborate each other to show that he's involved, just as his brother, in this kind of gang stuff.

So we would argue that clearly goes to the weight. If he wants to argue that at closing, that's fine, but it has nothing to do with whether it's admissible or not.

THE COURT: Let me make sure I understand what you're saying. What you're saying is that there is another notebook that was found in this defendant's room?

MR. SAACKS: Yes, sir.

THE COURT: That has basically the same types of information.

MR. SAACKS: Not everything, but some of the same types, yes, sir. Specifically, some of the same symbols and graffiti and things like that. And this will come out when Detective Dodson gets on the stand and talks about that. The red notebook is more of what might be known as a Book of Knowledge. It's really a gang manual. It gives a lot of codes, it gives a lot of symbols, it gives a lot of terms that are used. In the blue notebook you're going to have a lot of just random drawings and things of that nature, but— which are very similar, or the same, as to what is found in the red notebook that was found in Nicholas' room.

THE COURT: And other than it being information that a family member had, the defendant had, you know, potentially had access to, is there any other tie between this defendant and that notebook, other than it was in the house?

MR. SAACKS: Only other thing I can think of is that, you know, we had the school issue, there was that graffiti on the school desk that was done earlier. I don't know when this notebook was

prepared, so I can't say the school graffiti was before the notebook was prepared. Certainly before it was found. That would be˙ the only other thing that I would think, plus, obviously, the gang issue being involved. I mean this all goes to the same basic motive that we keep talking about in this case and what's going on out there. It's gang related, it's a gang motive. And this is showing either gang knowledge or gang involvement.

THE COURT: Mr. Brown, do you want to be heard in response to that?

MR.˙ BROWN: Well, as the Court well knows, from the time we did jury voir dire, we never contended that our client was not a member of a gang, and we do not now contend he's not a member of the gang. We have not changed our position on that. We're— and we don't—we don't disagree with Mr. Saacks that what he found in my client's room is not relevant and should not be admitted. We're not objecting to that. We're just simply saying that insofar as what's in his brother's room, he can't be held liable for his brother's stuff unless there's some tie-in here.

Now, I don't doubt for a second that there is gang material in the notebook that they took from Mr.—from Breon's room, but, and certainly—and I don't object to it. I don't object. But just insofar as this—insofar as Nicholas' room, unless there's some tie-in, I just simply contend that he would be no more guilty than if, you know, for example, you know, you found some child pornography in, you know, the father's bedroom, or something, you know, that would not make my client guilty of that. It wouldn't make the whole house guilty of that.

THE COURT: Well, let me ask this. If your position during the course of this trial is that your client is in fact a member of a gang, and that there's no dispute as to that, there's no dispute as to the gang—the particulars of the gang involvement, what's the prejudice in this coming in? Is there any particular prejudice based on the information contained in the notebook, or is it just that this is not something that was found in his room and therefore it shouldn't be tied to him?

MR. BROWN: May we approach the bench?

THE COURT: Sure.

(Bench conference not reported.)

THE COURT: All right, with respect to the defendant's objection as to the introduction of State's Exhibit—is it 30—State's Exhibit 30, the objection is overruled. Based on a consideration of the probative value and the potential prejudice, I do find that under Rule 403 that the probative value of the evidence outweighs the potential of any unfair prejudice, given that there is no dispute as to the defendant's involvement in gang-related activities, and that there is in fact another notebook of similar—of a similar nature and quality that was found in the defendant's room, I do find that there is some probative value as to the notebook and the potential for unfair prejudice is fairly low. So the objection is overruled.

The red notebook was then admitted into evidence. The blue notebook was also later admitted into evidence.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402.

[R]elevant evidence may be excluded if the probative value of the evidence is substantially outweighed by unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403.

Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree. The relevant evidence is properly admissible under Rule 402 unless the judge determines that it must be excluded, for instance, because of the risk of unfair prejudice. See N.C.G.S. § 8C-1, Rule 403 (Commentary) (Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.)

*State v. Cunningham*, 188 N.C. App. ——, ——, —— S.E.2d ——, —— (2008) (quoting *State v. Mercer*, 317 N.C. 87, 93-94, 343 S.E.2d 885, 889 (1986) (internal quotations omitted)).

The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded.

*State v. Taylor*, 154 N.C. App. 366, 372, 572 S.E.2d 237, 242 (2002) (quoting *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987)).

We need not address whether the red notebook was relevant, as even assuming *arguendo* that the red notebook was irrelevant, defendant failed to establish prejudice as the blue notebook found in defendant's room containing gang information was entered into evidence without objection and defendant himself testified that he was a member of the Folk gang. *See* N.C. Gen. Stat. § 15A-1443(a) (2005); *Taylor* at 372, 572 S.E.2d at 242. Furthermore, the jury specifically found that the following aggravating factor did not exist: "The offense was committed for the benefit of any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, and the defendant was not charged with committing a conspiracy[;]" as the jury did not find that gang involvement was an aggravating factor of the crime, we see no undue prejudice from the introduction of the red notebook containing gang information into evidence. This argument is overruled.

### IV. Conclusion

For the foregoing reasons, we find that the trial court did not err in the jury instructions it provided or in admitting the red notebook into evidence. Accordingly, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges HUNTER and CALABRIA concur.