An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1190

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Wake County
                                      No. 11CRS216911
MIGUEL ANTONI MEZA-RODRIGUEZ
    Defendant.


Appeal by Defendant from judgment entered 20 March 2013 by Judge Michael J. O'Foghludha in Wake County Superior Court. Heard in the Court of Appeals 5 March 2014.


> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Kimberly D. Potter, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for Defendant-appellant.*


DILLON, Judge.


Miguel Antoni Meza-Rodriguez ("Defendant") appeals from a conviction for first-degree murder.  For the following reasons, we find no reversible error.

I. Background

On 9 August 2011, Defendant was indicted on one count of first-degree murder. Defendant was tried on this charge at the 18 March 2013 Criminal Session of Wake County Superior Court. The State's evidence tended to show that Pedro Fernandez discovered that his mother was having an affair with Santiago Hernandez-Arredondo. Mr. Fernandez asked Chris Reina, Alfredo Acosta, and Defendant to help him beat up Mr. Hernandez-Arredondo and promised to pay Defendant $500 for his assistance. After hearing from Mr. Fernandez about his plans, Defendant and the others agreed to "help [Mr. Fernandez] go and beat him down."

Mr. Fernandez initially contacted Mr. Hernandez-Arredondo by phone under the pretense that he needed a quote from him for a construction job. Mr. Fernandez did not tell him his real name but used the alias "Jorge" or "George." On the morning of 17 July 2011, Mr. Fernandez drove Mr. Acosta, Mr. Reina, and Defendant to meet up with Mr. Hernandez-Arredondo at a lumberyard. Mr. Fernandez brought a table leg and a baseball bat to use in the beating. Mr. Reina testified that it was his understanding that Defendant would hold a gun on Mr. Hernandez-Arredondo, while the others beat and robbed him.

When they arrived at the lumberyard, Mr. Fernandez became concerned because of the number of cars in the area, so he asked Mr. Hernandez-Arredondo to follow him to the house that needed the work. Not having planned for this, Mr. Fernandez drove to the first house he saw with a "for sale" sign in the yard and pulled into the driveway, followed by Mr. Hernandez-Arredondo.

Mr. Fernandez and Mr. Hernandez-Arredondo got out of their respective vehicles and began talking, as they walked towards the house. The others stayed in the car. After about five minutes, Defendant told Mr. Reina and Mr. Acosta that he was going to get out of the car and point the gun at Mr. Hernandez-Arredondo. Defendant exited out of the car, tucked the gun in the waistline of his pants, and walked up to Mr. Fernandez and Mr. Hernandez-Arredondo as they talked.

During their conversation, Mr. Hernandez-Arredondo asked Mr. Fernandez for his real name but he responded that his real name was "George." Mr. Hernandez-Arredondo then asked if Mr. Fernandez's name was "George" or "Pedro." Defendant then called Mr. Hernandez-Arredondo by an offensive name and shot him in the face.

Mr. Fernandez and Defendant returned to the car, but Defendant went back to retrieve Mr. Hernandez-Arredondo's

wallet, as he lay on the ground. Mr. Fernandez then drove away from the scene, while Defendant counted the money from Mr. Hernandez-Arredondo's wallet, giving Mr. Reina $50 of the $400 he got. Mr. Fernandez then drove the four of them to a restaurant, where they were joined by Mr. Fernandez's father and uncle. Mr. Fernandez paid Defendant the $500. Defendant was subsequently interviewed by police during the investigation and told them that he slept late on Sunday, 17 July 2011, and stayed at home until 2 p.m. that day. Defendant did not testify or offer any evidence at trial.

On 20 March 2013, a jury found Defendant guilty of first-degree murder based on the felony murder rule. The trial court sentenced Defendant to life imprisonment without parole. Defendant gave notice of appeal in open court.

## II. Argument

On appeal, Defendant argues that (1) the trial court committed reversible error by allowing Mr. Fernandez to testify regarding his motive to kill, (2) the trial court committed plain error by admitting evidence regarding the victim's good character, and (3) the trial court committed plain error by admitting evidence regarding his alleged alcohol and drug use

before and after the killing.  We address each argument in turn below.

### A. Testimony Regarding Defendant's Motive

Defendant contends that the trial court erred in allowing Mr. Fernandez to give speculative testimony regarding Defendant's motive or intent to kill Mr. Hernandez-Arredondo. Specifically, Defendant points to the following testimony from Mr. Fernandez, which he contends represents Mr. Fernandez's opinion regarding Defendant's motives or intentions when Defendant shot Mr. Hernandez-Arredondo:

> [Prosecutor].  And when you got back in the car, did you ask [Defendant] why he did it?
>
> [Mr. Fernandez]. No.
>
> Q.  Do you have any idea why [Defendant] did that?
>
> [Defense Counsel]: Objection. Calls for speculation.
>
> THE COURT:  Overruled.
>
> [Prosecutor].  Do you know why [Defendant] did that?
>
> A.  I think because the man recognized me. He say my name.  And I don't know if [Defendant] got nervous and shot him by accident.  Because it was not part of the plan to shoot anyone.

From the record, it appears that Defendant objected to the admission of this evidence and the trial court overruled his objection. Therefore, this argument is properly preserved for our review. *See* N.C. R. App. P. 10(a)(1).

North Carolina Courts have generally held that a witness's opinion of another person's intention on a particular occasion has been generally inadmissible. *State v. Patterson*, 288 N.C. 553, 566, 220 S.E.2d 600, 610 (1975), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1211 (1976); *Ballard v. Ballard*, 230 N.C. 629, 634, 55 S.E.2d 316, 320 (1949); *State v. Vines*, 93 N.C. 493, 496-97 (1885). Additionally,

> [t]he burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded.

*State v. Taylor,* 154 N.C. App. 366, 372, 572 S.E.2d 237, 242 (2002) (citing *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987)); *see also* N.C. Gen. Stat. § 15A-1443(a) (2011).

We note that Defendant was convicted of first-degree murder based on the felony murder rule and the underlying felony of robbery with a firearm. Our Supreme Court has stated that

"[f]elony murder, by its definition, does not require 'intent to kill' as an element that must be satisfied for a conviction." *State v. Cagle*, 346 N.C. 497, 517, 488 S.E.2d 535, 548 (citation omitted), *cert. denied*, 522 U.S. 1032, 139 L. Ed. 2d 614 (1997).[1] Also, intent to kill is not an element of robbery with a firearm. *State v. Kearns*, 27 N.C. App. 354, 356, 219 S.E.2d 228, 230 (1975), *disc. review denied*, 289 N.C. 300, 222 S.E.2d 700 (1976).

Defendant, however, argues that – although intent to kill or motive is not an element of the crime of felony murder – Mr. Fernandez's opinion testimony was evidence which tended to show that Defendant was the person who pulled the trigger. *See State v. Van Landingham*, 283 N.C. 589, 600, 197 S.E.2d 539, 546 (1973) (stating that "[e]vidence of motive is relevant as a circumstance to identify an accused as the perpetrator of an offense[.]" (citation and quotation marks omitted)). However, even assuming that Mr. Fernandez's testimony had this effect, we do not believe Defendant was prejudiced by its admission because of the other evidence presented that put the gun in Defendant's

---

[1] Our Supreme Court has recognized that motive is not an element of felony murder but can be relevant as to sentencing in a felony murder conviction. *See State v. Irwin*, 304 N.C. 93, 107, 282 S.E.2d 439, 448 (1981). Defendant raises no issues as to sentencing.

hands. For example, the key aspect of Mr. Fernandez's testimony which incriminates Defendant as being the shooter is not his statement regarding Defendant's intent or motive, but rather his statement that he actually saw Defendant pull the trigger. Accordingly, Defendant's argument is overruled.

B. Testimony Regarding the Victim's Good Character

Defendant next contends that the trial court's admission of the victim's daughter's testimony regarding the good character of Mr. Hernandez-Arredondo was inadmissible, as Defendant had not challenged the victim's character. Defendant concludes that this error amounted to plain error and he is entitled to a new trial, as this testimony tended to distract the jury, created sympathy for the victim and excited prejudice against Defendant, allowing the jury to decide the case not on what happened but upon the characters of Defendant and the victim.

The trial transcripts shows that the victim's daughter Anabel Hernandez testified that the victim was responsible, hard-working, provided for his family, non-violent, concerned about her education, concerned about his community, and ran his own construction business. The record shows that Defendant failed to object to this testimony regarding the victim's character. *See* N.C. R. App. P. 10(a)(1). Therefore, review for

plain error is appropriate. *See* N.C. R. App. P. 10(a)(4). To establish plain error, Defendant must show

> that a fundamental error occurred at trial. *See* [*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)]. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (citations and quotation marks omitted) . . . . Moreover, because plain error is to be "applied cautiously and only in the exceptional case," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378[.]

*State v. Lawrence*, ____ N.C. ___, ___, 723 S.E.2d 326, 334 (2012). Therefore, "[i]n order to prevail under a plain error analysis, Defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Steen*, 352 N.C. 227, 269, 536 S.E.2d 1, 25-26 (2000) (citation and quotation marks omitted), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

After examining all of the evidence presented, we note that Ms. Hernandez's testimony was only a small portion of the evidence from one of the eleven witnesses presented by the State

against Defendant. Given the overwhelming evidence of Defendant's guilt presented by the State, including testimony from Defendant's friends Mr. Fernandez and Mr. Reina that Defendant pointed the handgun at the victim, shot the victim in the face, and returned to take the victim's wallet, we cannot say that any error in the admission of this testimony "had a probable impact on the jury's finding that Defendant was guilty," *see Lawrence*, ___ N.C. at ___, 723 S.E.2d at 334, and its exclusion would have resulted in a different result at trial. Accordingly, we find no plain error; and Defendant's argument is overruled.

C. Testimony Regarding Defendant's Alleged Alcohol and Drug Use

Lastly, Defendant contends that the trial court committed plain error in admitting irrelevant and prejudicial "other crimes" evidence that Defendant sought drugs before the killings and drank alcohol and snorted cocaine afterwards. As Defendant did not object at trial to the introduction of this testimony, we review this argument under a plain error standard of review. *See* N.C. R. App. P. 10(a)(4); *Lawrence*, ____ N.C. at ___, 723 S.E.2d at 334; *Steen*, 352 N.C. at 269, 536 S.E.2d at 25-26.

Even assuming *arguendo* that it was error for the trial court to allow testimony regarding Defendant's alcohol and drug

use, we again conclude that it did not rise to the level of plain error. The highlighted testimony regarding Defendant's alcohol and drug use was only a small portion of the testimony from two of the numerous witnesses the State put forth in this case. In contrast to Defendant's argument that the evidence against him was not "particularly strong[,]" a thorough examination of the whole record contains overwhelming evidence of Defendant's guilt; and we are not persuaded that the jury's verdict would have probably been different if the evidence of Defendant's drug and alcohol use had not been admitted. Accordingly, Defendant failed to show plain error.

For the foregoing reasons, we find no reversible error in Defendant's trial.

NO ERROR.

Judge BRYANT and Judge STEPHENS concur.

Report per Rule 30(e).